UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Calvin Walker, | Case No.: 2:19-cv-01587-JAD-NJK |
| Plaintiff | |
| v. | **Order Granting Motions for Summary Judgment and Leave to File Exhibits Under Seal and Closing Case** |
| Ray Allen, et al., | |
| Defendants | [ECF Nos. 43, 45] |

Nevada inmate and pro se plaintiff Calvin Walker brings this 42 U.S.C. § 1983 action against four High Desert State Prison (HDSP) officials for unsafe conditions of confinement and deliberate indifference to his medical needs after he slipped and fell. Walker alleges that HDSP correctional officer Ray Allen turned off the prison lights while Walker was cleaning his cell floor—causing his fall—and was deliberately indifferent when he failed to respond to Walker's request for emergency attention. Walker further claims that former HDSP Warden Brian Williams, former HDSP Associate Warden Jennifer Nash, and Nevada Department of Corrections (NDOC) Medical Director Dr. Michael Minev withheld medical treatment for Walker's back injury for more than 240 days, in deliberate indifference to his medical needs. Walker also contends that Nash and Williams were deliberately indifferent when they refused to transfer him to a flat yard and low bunk as accommodations for his back pain.

The defendants move for summary judgment on all of Walker's claims and for leave to file two exhibits under seal. Both motions are unopposed. Because the defendants have shown that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law, I grant their motion for summary judgment. I also grant the defendants' motion for leave to seal exhibits because the records at issue contain Walker's private medical information.

**Background**[1]

Around 6:50 p.m. on August 31, 2018, Walker was cleaning the floor of his prison cell when Allen "cut off all the unit lights[,] the tier lights[,] the cell lights[,] and the night lights."[2] Walker "tried to get to the emergency call button [in his cell] to get . . . Allen to turn back on the cell lights" but before he could, he slipped and fell on the concrete floor of his cell, injuring his back.[3] He asked his cellmate to get help, and his cellmate pressed the emergency call button, but Allen didn't respond.[4] Walker alleges that "numerous inmates [were] shouting out of their doors, letting . . . Allen know that they did not appreciate him turning off all the lights" and telling "Allen to answer the call button intercom."[5] About fifteen minutes after Walker fell, a pill-call nurse stopped by Walker's cell, Walker told her about his fall, and she told him to submit a medical kite and that "the sick[-]call nurse will see [him] and give [him] pain meds."[6]

Walker alleges that he "was in pain and had limited mobility for months and could not get out of bed to go get meals or shower at time[s] because of the severity of [his] pain."[7] He asserts that he submitted several medical kites—and eventually grievances—requesting medical treatment for his back, and he alleges that Nash, Williams, and Dr. Minev were on notice of his medical needs because he believes they received those kites and grievances. Walker was not

---

[1] This is a summary of Walker's allegations and is not intended as findings of fact.
[2] ECF No. 9 at 4.
[3] *Id.*
[4] ECF No. 3 at ¶ 4 (Walker's affidavit in support of his motion for preliminary injunction).
[5] ECF No. 9 at 4.
[6] ECF No. 3 at ¶ 6.
[7] *Id.* at ¶ 7.

2

seen by a medical professional until April 16, 2019, 228 days after his fall.[8]  He received an x-ray on May 2, 2019, which showed that "[a]lignment is within normal limits with no fracture or subluxation.  Moderate changes of degenerative disc disease are evident at L4–L5.  There appear to be tiny metallic foreign bodies which are mostly posterior in location, suggesting a previous gunshot wound."[9]

After the x-ray, Walker was seen by medical professionals numerous times for his back pain, was prescribed a variety of medications to manage his pain and was given a cane, a back brace, and a 60-day lay-in (no-work) order.[10]  In June 2019, Walker submitted another grievance requesting treatment for his back pain.[11]  Dr. Minev denied the grievance because Walker's medical records demonstrated that Walker had been treated for his back pain at least five times.[12]  Lastly, Walker alleges that he requested to be restricted to a low bunk and a flat yard to help with his back pain, but that Williams and Nash ignored those requests.[13]

Walker initiated this action in September 2019.  After screening, he was left with three claims: unsafe prison conditions against Allen; deliberate indifference to serious medical needs (back pain) against Allen, Minev, Nash, and Williams; and deliberate indifference to serious medical needs (lower-bunk and flat-yard reassignment) against Nash and Williams.[14]  Discovery

---

[8] *See, e.g.*, *id.* at ¶ 8; ECF Nos. 43-4–43-7; ECF No. 47-1 at 2–6, 9; ECF No. 47-2 at ¶¶ 9–11.  Walker contends that he didn't receive medical treatment for 240 days, but he doesn't provide the dates that he used to arrive at this conclusion. ECF No. 9 at 5, 8.

[9] ECF No. 47-1 at 8.

[10] ECF No. 47-2 at ¶¶ 13–25.

[11] ECF No. 43-6 at 3.

[12] *Id.* at 4.

[13] ECF No. 9 at 6.

[14] ECF No. 8 at 9.

has closed, and all four of the remaining defendants now move for summary judgment and for leave to file two exhibits under seal.[15]  Walker did not respond to either of the defendants' motions, and the deadline for response passed months ago.

## Discussion

### I. Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[16]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[17]  If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[18]  Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[19]  "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[20]

---

[15] ECF No. 43; ECF No. 45.

[16] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[17] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[18] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[20] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

The failure to oppose a motion for summary judgment does not permit the court to enter summary judgment by default, but the lack of a response is not without consequences.[21] As Federal Rule of Civil Procedure 56(e) explains, "If a party fails . . . to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."[22]

## II.     Unsafe-conditions-of-confinement claim against Allen

Walker alleges that "Allen created a hazardous condition in [his] cell" when Allen "cut off all the unit lights[,] the tier lights, the cell lights[,] and the night lights," leading Walker to slip and fall "on the concrete floor, causing severe pain in [his] back."[23] He alleges that Allen turned the lights off not for a legitimate purpose, but instead "to convey to everyone that . . . Allen was in control."[24] The defendants respond that the lights couldn't have been turned off when Walker alleges he fell because other inmates "were on tier and showering" twenty minutes after that, and "[i]nmates do not have access to the tier and showers if the tier lights are turned off."[25] Alternatively, the defendants argue that Walker—not Allen—created any slip hazard when he cleaned his cell floor and that Walker has neither alleged "that Allen had objective knowledge of Walker's activities[] in his own cell" nor presented evidence that Allen consciously disregarded a harm to Walker.[26]

---

[21] *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013).

[22] Fed. R. Civ. P. 56(e)(2) & (3); *Heinemann*, 731 F.3d at 917.

[23] ECF No. 9 at 4.

[24] *Id.*

[25] ECF No. 43 at 14 (citing ECF No. 43-3—the daily shift log containing prison officials' notes about "any unusual occurrences, which would include emergencies" (ECF No. 43 at 4)).

[26] *Id.*

Prison officials "must provide humane conditions of confinement"; "must ensure that inmates receive adequate food, clothing, shelter, and medical care[;] and must 'take reasonable measures to guarantee the safety of the inmates.'"[27] "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[28] Courts use a two-part test to determine whether a prison official has violated an inmate's Eighth Amendment rights: (1) "the deprivation alleged must be, objectively, sufficiently serious . . . [and] a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities" and (2) "a prison official must have a sufficiently culpable state of mind."[29] The second element is only implicated if the prison official engages in "the unnecessary and wanton infliction of pain."[30]

Walker alleges that the lights were turned off,[31] but the defendants offer evidence they weren't: the daily shift log, which doesn't show that a prison official turned the lights off.[32] Because Walker has not responded to the motion, he offers no evidence to the contrary. But even if Allen did turn off the lights, doing so did not "result in the denial of the minimal civilized measure of life's necessities."[33] It is undisputed that while the lights were allegedly off, "Walker's cellmate experienced no difficulty in moving freely around in their cell" and "Walker,

---

[27] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).
[28] *Helling v. McKinney*, 509 U.S. 25, 31 (1993).
[29] *Farmer*, 511 U.S. at 834 (cleaned up).
[30] *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (cleaned up).
[31] *See, e.g.*, ECF No. 9 at 4, 8.
[32] ECF No. 43 at 4 (citing ECF No. 43-3).
[33] *Farmer*, 511 U.S. at 834 (cleaned up).

6

himself, was able to move about the cell to get to the nurse for pill call."[34]  Further, Walker hasn't established that Allen knew Walker was cleaning his cell floor with a slippery substance or that he had the "sufficiently culpable state of mind" to unnecessarily and wantonly inflict pain on Walker by turning out the lights.[35]  Walker alleges that Allen turned the lights off "to convey to everyone that [he] was in control," but that is insufficient to show that Allen turned the lights off to unnecessarily and wantonly inflict pain on Walker.  And although Walker alleges that Allen "disrupted all activity in the cells" when he turned off the lights, he fails to provide evidence that Allen knew Walker was cleaning his floor with a slippery substance at the time.[36]  In sum, no genuine dispute of material fact exists that would preclude summary judgment in Allen's favor on Walker's unsafe-conditions-of-confinement claim.

### III. Deliberate-indifference claim against all four remaining defendants for failure to treat Walker's back pain

A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate.[37]  The Ninth Circuit uses a two-part test for deliberate-indifference claims and requires a plaintiff to "satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."[38]  For the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat [his] condition could result in further

---

[34] ECF No. 43 at 4 (emphasis omitted); ECF No. 3 at 2.

[35] *Seiter*, 501 U.S. at 298 (cleaned up).

[36] ECF No. 9 at 4.

[37] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

[38] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

7

significant injury or the unnecessary and wanton infliction of pain."[39]  For the second prong, he must show "(a) purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."[40]

### A. Allen

Walker alleges that correctional officer Allen was deliberately indifferent to his serious medical needs by "refus[ing] to respond to the emergency beacon, initiated by [Walker's] cell-mate pushing the emergency button" immediately after Walker slipped and fell.[41]  The defendants argue that the shift log[42] doesn't show that Walker or his cellmate requested emergency attention on the night of Walker's fall and that "[t]here is no admissible evidence that Allen was aware of any fall, request for medical attention, or back pain, and subsequently failed to take action."[43]  The defendants reason that the shift log "notes any unusual occurrences, which would include emergencies," so because the log doesn't show that the emergency button was pushed, it could not have been pushed.[44]  In a sworn declaration submitted with an earlier motion for preliminary injunction, Walker notes that he "tried to get to the emergency call button to get [] Allen to turn back on the cell lights" but slipped before he was able to, so his cellmate pressed the call button for him.[45]

---

[39] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted).

[40] *Id.*

[41] ECF No. 9 at 4.

[42] ECF No. 43-3.

[43] ECF No. 43 at 16.

[44] *Id.* at 4.

[45] ECF No. 3 at ¶¶ 3–4.  The prison official who reviewed Walker's grievance about Allen's alleged deliberate indifference noted that officers "do[] not have the capability to disable the [e]mergency [c]ommunications button" because "[t]he electronic circuits located on the control panel of the [u]nit [c]ontrol have no provisions for doing so."  ECF No. 43-7 at 5.

8

Even if Walker's cellmate did push the emergency button, as Walker avers, the record is devoid of evidence showing that Allen knew Walker was cleaning his floor—and thus that a slip-and-fall hazard existed—or that he was aware Walker had fallen. Without evidence that Allen was on notice that Walker had slipped and fallen, Allen cannot have been deliberately indifferent to Walker's medical needs. And, as the defendants point out, and Walker agrees,[46] a pill-call nurse stopped by Walker's cell approximately fifteen minutes after he fell, Walker "let her know what had happened," and the nurse responded by telling "him to fill out a medical kite,"[47] indicating that prison officials were responding to Walker's request. Because the evidence doesn't show that Allen knew Walker had slipped and fallen in his cell, he couldn't have been deliberately indifferent to Walker's medical needs. So I grant Allen summary judgment on this claim.

### B. Nash

Walker alleges that Nash, HDSP's former associate warden, was deliberately indifferent to his medical needs because she was on notice that Walker was in pain and refused to act or respond to his request for medical care.[48] The defendants argue that Nash didn't receive any of Walker's medical kites, none of the kites were addressed to Nash, and she didn't review or sign any of them.[49] They further aver that "Nash was merely the grievance coordinator" and that "[m]edical determinations are outside [her] scope of employment."[50]

---

[46] ECF No. 3 at ¶ 6.
[47] ECF No. 43 at 4 (citing ECF No. 3 at 2).
[48] ECF No. 9 at 8.
[49] ECF No. 43 at 16.
[50] *Id.* at 17 & n.10.

A defendant is liable under § 1983 "only upon a showing of personal participation by the defendant,"[51] and "[t]here is no respondeat superior liability under [S]ection 1983."[52] Generally, supervisors are not liable under § 1983 for their employees' actions unless "the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."[53] A plaintiff "must show that each defendant personally played a role in violating the Constitution,"[54] and "[a]n official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'"[55] The record doesn't show that Nash personally participated in the review of Walker's kites or grievances. Nor does it show that she was even aware that Walker had fallen in his cell or requested medical care. And because there is no respondeat superior liability under § 1983, even if another prison official was deliberately indifferent to Walker's medical needs, that would be insufficient to establish Nash's liability. I therefore grant Nash summary judgment on Walker's deliberate-indifference claim.

### C.    Williams

Walker claims that Williams, HDSP's former warden,[56] was deliberately indifferent to his medical needs in the same way that Nash was: Williams knew of Walker's injury and didn't act to help him or respond to his kites or grievances.[57] But Williams did respond to Walker's

---

[51] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[52] *Id.*

[53] *Id.* (citing *Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 680–81 (9th Cir. 1984)).

[54] *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) (citing *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005); *Taylor*, 880 F.2d at 1045).

[55] *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011)).

[56] ECF No. 43 at 1–2.

[57] ECF No. 9 at 8.

first-level grievance (number 2006-30-72300) on March 27, 2019.[58] And it is undisputed that Walker was examined by a medical professional on April 16, 2019, less than three weeks after Williams denied Walker's grievance.[59] So because Williams responded to the grievance and Walker received medical care shortly thereafter, Walker cannot demonstrate that Williams was deliberately indifferent to his medical needs. I therefore grant Williams summary judgment on Walker's deliberate-indifference claim.

### D. Dr. Minev

Walker alleges that Dr. Minev, NDOC's medical director,[60] was deliberately indifferent to his medical needs because he was "made aware of [Walker's] injury and his need of medical care" but "refused, failed[,] and/or neglected to look into the situation, did not attempt to abate the situation[,] or even respond" to the request.[61] The defendants counter that "Dr. Minev only reviewed [Walker's] second[-]level grievance," after which Dr. Minev concluded "that an effort had been made to address the problem" "because Walker had been treated five . . . times for his back pain."[62]

The record shows that Dr. Minev reviewed Walker's second-level grievance (number 2006-30-80948, submitted on June 22, 2019) in which Walker requested "prompt and timely medical attention" for his back injury and "compensation for [his] pain and suffering."[63] Dr. Minev ultimately denied the grievance, concluding that Walker's "statement that [he has] not

---

[58] ECF No. 43-7 at 6.
[59] ECF No. 3 at ¶ 8; ECF No. 47-2 at ¶ 11.
[60] ECF No. 43 at 1.
[61] ECF No. 9 at 8.
[62] ECF No. 43 at 17.
[63] ECF No. 43-6 at 3.

received treatment is demonstrably false," given that there are "five entries in [Walker's] medical file showing an effort to address the problem."[64]  In June 2019 when this grievance was processed, Walker had been prescribed several pain medications and had already been given a 60-day lay-in order and a cane.[65]  Because the evidence shows that Walker was actively being treated for his back pain by the time Dr. Minev was on notice of it, Walker cannot establish that Dr. Minev was deliberately indifferent to his medical needs.  I therefore grant Dr. Minev summary judgment on Walker's deliberate-indifference claim.

### IV. Deliberate-indifference claim against Nash and Williams for failure to transfer Walker to a flat yard and low bunk

Walker claims that Nash and Williams were also deliberately indifferent to his medical needs by failing to transfer him to a flat yard[66] and a low bunk[67]—two accommodations that Walker believes would have eased his back pain.[68]  He recounts that he requested medical services to assign him to a flat yard and low bunk but that he did not receive a response.[69]  He further alleges that he submitted an inmate request form to Nash and Williams asking "that they

---

[64] *Id.* at 4.

[65] *See* ECF No. 47-2 at ¶¶ 13–17.

[66] Walker alleges that he had "difficulty going to [and from] chow or the chapel . . . due to the large hill on the grounds" (ECF No. 9 at 9) and that he "had to miss meals" because he was "unable[] to walk up and down the steep hills on this yard."  *Id.* at 6.

[67] Walker contends that he "was assigned to the top bunk[,] and jumping up and down to and from the top bunk caused pain and suffering."  *Id.* at 9.

[68] ECF No. 9 at 6, 9.

[69] *Id.* at 6.  *See also* ECF No. 47-1 at 4 (Walker's kite in which he requests a low-bunk restriction from medical services).

intercede, on [his] behalf, to medical" but they didn't respond.[70] The defendants argue that Walker didn't exhaust his administrative remedies and thus cannot bring this claim.[71]

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all available remedies before filing "any suit challenging prison conditions."[72] Failure to properly exhaust all available remedies as required by the PLRA is "an affirmative defense the defendant must plead and prove."[73] Once a defendant proves that there was an available administrative remedy that the inmate did not exhaust, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."[74] Nonetheless, the ultimate burden of proof remains with the defendant.[75]

The defendants have established that NDOC has a three-level grievance process.[76] An inmate begins this process by filing an informal grievance, which is "generally responded to by the inmate's assigned case worker."[77] An inmate can appeal the prison's response to his informal grievance by filing a first-level grievance, which is "typically responded to by the Warden or Warden's designee."[78] To properly exhaust this process, the inmate must also appeal the prison's first-level response by filing a second-level grievance, which is "typically responded

---

[70] ECF No. 9 at 6.
[71] ECF No. 43 at 18–19.
[72] 42 U.S.C. § 1997e(a).
[73] *Jones v. Bock*, 549 U.S. 199, 204 (2007).
[74] *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).
[75] *Id.*
[76] ECF No. 43 at 18–19 (citing ECF No. 43-10, Administrative Regulation (AR) 740).
[77] *Id.* at 18.
[78] *Id.*

13

to by a NDOC Deputy Director."[79] And "[i]f the grievance relates to a medical issue, it is typically addressed by the charge nurse of the institution at the informal level, a Director of Nursing Services (DONS) at the first level[,] and the Medical Director at the second level."[80]

The defendants have established that Walker did not exhaust the administrative process for his requests to be moved to a flat yard and low bunk. He "did not file any grievances regarding his request to be medically transferred to a flat yard and a low bunk," and the requests he made to medical and to Nash and Williams are not considered grievances because they didn't go through the HDSP grievance procedure.[81] Having reviewed Walker's grievances that the defendants attached to their summary-judgment motion, I find that none of them are related to Walker's request to be moved to a flat yard or low bunk.[82] Even viewing Walker's medical kite[83] in the light most favorable to him, I cannot conclude that he properly exhausted his administrative remedies, because a kite is not a grievance.[84] Even if it were a grievance, the evidence shows that Walker did not fully exhaust the grievance process for this claim. I therefore grant Nash and Williams summary judgment on Walker's deliberate-indifference claim related to his flat-yard and low-bunk requests.

---

[79] *Id.*

[80] *Id.* at 18–19.

[81] *See* ECF No. 43-7 (Walker's grievance history, containing no grievances about flat-yard or low-bunk restrictions). *See generally* ECF No. 43-10 (AR 740).

[82] *See* ECF No. 43-4; ECF No. 43-5; ECF No. 43-6; ECF No. 43-7; *see also* ECF No. 43-7.

[83] ECF No. 47-1 at 4.

[84] *See Green v. Lindberg*, 2020 WL 3568653, at *2 (Nev. App. June 30, 2020) (distinguishing between kites and grievances and holding that "the fact that the Administrative Regulations encourage inmates to try to resolve issues through kites before filing a grievance demonstrates that the two are not the same thing.").

### V.     There are sufficiently compelling reasons for the two exhibits to be filed under seal.

The defendants move for leave to file under seal Walker's medical records and a declaration from SDCC Director of Nursing Services Bob Faulkner discussing Walker's medical conditions.[85] They explain that both exhibits were already used to support their response to Walker's motion for injunctive relief and were filed under seal with leave from the court.[86] They move for leave to file them under seal again "for ease of this [c]ourt's consideration."[87]

It is well-established that the Ninth Circuit "recognize[s] a 'general right to inspect and copy public records and documents, including judicial records and documents.'"[88] "This right is justified by the interest of citizens in keeping a watchful eye on the workings of public agencies."[89] But "access to judicial records is not absolute."[90] Courts "have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records."[91] "This is because a person's medical records contain sensitive and private information about their health."[92] The defendants have demonstrated that the exhibits "contain[] information and portions of Walker's medical records, which include diagnoses, treatment plans, and other communications related to Walker's medical conditions and health."[93] I find that these are

---

[85] ECF No. 45.

[86] *Id.* at 1–2.

[87] *Id.* at 2.

[88] *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)).

[89] *Id.* (cleaned up).

[90] *Id.*

[91] *Steven City Broomfield v. Aranas*, 2020 WL 2549945, at *2 (D. Nev. 2020) (collecting cases).

[92] *Id.*

[93] ECF No. 45 at 3.

sufficiently compelling reasons to overcome the presumption of the public's access to these exhibits.  So I grant the defendants' motion for leave to file them both under seal.

## Conclusion

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **[ECF No. 43] is GRANTED**.  **The Clerk of Court is directed to ENTER FINAL JUDGMENT** in favor of the defendants and against the plaintiff on all claims and to **CLOSE THIS CASE**.

IT IS FURTHER ORDERED that the defendants' motion for leave to file exhibits under seal **[ECF No. 45] is GRANTED**.  The Clerk of Court is directed to **MAINTAIN THE SEAL on ECF No. 47**.

_____
U.S. District Judge Jennifer A. Dorsey
March 1, 2022